## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Robyn M. I.,                                               Civ. No. 19-3052 (BRT)

        Plaintiff,

v.                                                          **MEMORANDUM**
                                                       **OPINION AND ORDER**

Andrew Saul,
Commissioner of SSA,

        Defendant.

---

Mac Schneider, Esq., Schneider Schneider & Schneider, counsel for Plaintiff.

Tracey Wirmani, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final

administrative decision of the Commissioner of Social Security ("the Commissioner")

denying her application for Social Security disability insurance benefits. This matter is

before the Court on the parties' cross-motions for summary judgment, in accordance with

D. Minn. LR 7.2(c)(1). (Doc. Nos. 11, 13.) For the reasons stated below, Plaintiff's

motion is denied, and Defendant's motion is granted.

## BACKGROUND

Plaintiff has a Bachelor's degree in criminal justice and a paralegal diploma. (Tr. 78, 243.)[1] She worked as a program manager from 2005 to 2015, which is classified as skilled, sedentary work as generally performed. (Tr. 79, 244, 249.) Plaintiff also has past work experience as an apartment manager, clerk, and volunteer firefighter. (Tr. 79–81, 244, 249.) On September 15, 2015, Plaintiff filed a Title II application for disability insurance benefits. (Tr. 108.) In her application, Plaintiff alleged a disability onset date of April 20, 2015, due to mental and physical impairments that included severe depression, anxiety, Bell's palsy, severe nerve pain on the left side of the face (trigeminal neuralgia), chronic migraines, inflamed liver, kidney condition, and thyroid condition. (Tr. 15, 81–101, 108, 242.) She alleges that her impairments and pain from the impairments make her unable to work. (Tr. 128, 242–43.)

An Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application on August 29, 2017. (Tr. 71–107.) In a decision dated November 24, 2017, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and denied Plaintiff's application (Tr. 12.) The ALJ proceeded through the five-step evaluation process provided in the Social Security regulations.[2]

---

[1]    Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 9.)

[2]    At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period since her alleged onset date of April 20, 2015. (Tr. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, migraine headaches, trigeminal neuralgia, recurrent major depressive disorder, and anxiety-related disorders (generalized anxiety disorder, panic disorder, and post-traumatic stress disorder ("PTSD")). (Tr. 17–18.) At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet the criteria of any Social Security listed impairments. (Tr. 18–20.)

Before reaching step four, the ALJ determined the Plaintiff's residual functional capacity ("RFC").[3] The ALJ found that Plaintiff had the RFC to perform less than the full range of medium work with the following clarifications and limitations:

> The claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; sit with normal breaks for a total of about 6 hours in an 8-hour workday; and stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday. The claimant can never climb ladders/scaffolds, work at unprotected heights, or work with dangerous

criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of her past work. And at step five, the ALJ determines whether the claimant can do any other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[3]     A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [she] can still do despite [her] limitations"). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted).

3

moving mechanical parts. She needs to avoid concentrated exposure to environments where exposed to vibrating work surfaces and loud noises (with loud noises being defined in the Selected Characteristics of Occupations ("SCO") as noise consistent with large earth-moving equipment or heavy traffic). Mentally, the claimant retains the ability to understand, remember, and carry out short, simple instructions. She is able to interact appropriately with supervisors and co-workers on an occasional basis, but she should not interact with the public. The claimant can respond appropriately to changes in a routine work setting and make judgments on simple work-related decisions.

(Tr. 20.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 26.) Finally, relying on the testimony of a vocational expert, the ALJ concluded at step five that Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy.[4] (Tr. 26–27.) Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27.)

## ANALYSIS

### I.    Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful

---

[4]      These jobs included clothes sorter, routing clerk, and garment sorter. (Tr. 27.)

work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision is reviewed "for legal error and to ensure that the factual findings are supported by substantial evidence" in the record as a whole. *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

5

**II.      Analysis of the ALJ's Decision**

On appeal, Plaintiff argues the ALJ failed to properly evaluate the opinions of

Plaintiff's treating sources in determining her RFC. Specifically, Plaintiff argues that the

ALJ improperly discounted the opinions of Plaintiff's neurologist and therapist, both

acceptable medical sources. Plaintiff further argues that the ALJ erred in his credibility

finding by improperly assessing Plaintiff's pain according to the standards set forth in

SSR 16-3p. Plaintiff asks that the case be remanded to the Commissioner to address these

errors.

**A.      ALJ's Consideration of Dr. Shaun Christenson's Opinion**

Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Shaun

Christenson, MD, a neurologist who had treated Plaintiff, in violation of SSR 96-2p.

(Doc. No. 12, Pl.'s Mem. 10–13.) Plaintiff argues that Dr. Christenson's opinions

indicate that she was experiencing a "daily, persistent headache" that was present

"30 days a month, 24 hours a day" and that these symptoms were "obviously" affecting

her ability to function and were having an "extensive impact on her life." (*Id*. at 10;

Tr. 474, 503.)

A treating source's medical opinion is entitled to controlling weight if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the claimant's] case record."

20 C.F.R. § 404.1527(c)(2)[5]; *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). Although a treating physician's opinion is usually entitled to great weight, it "[d]oes not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785–86 (8th Cir. 1995) (citation omitted).

The SSA regulations require that the ALJ must "always give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations and quotation marks omitted). An ALJ may "justifiably discount the opinion of a treating physician where it is inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal citation and quotation marks omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the [treating physician's] opinion.").

---

[5]     Plaintiff's claim is governed by 20 C.F.R. § 404.1527(c). The SSA has since amended its rules for treating physician opinions, but those changes do not apply here. *See* 20 C.F.R. § 404.1520c.

At issue in this appeal is a letter dated February 9, 2016, which was written by Dr. Christenson to secure insurance for Plaintiff's Botox. (Tr. 474.) In the letter, Dr. Christenson describes Plaintiff's chronic migraines as follows:

> It is present 30 days a month, 24 hours a day, with photophobia, phonophobia, and nausea . . . This is having a very large impact on her life. She is becoming depressed because of this. She is tearful and anhedonic. Her husband notes that she does not do any activities anymore. She is not interested in doing any sort of fun activities. This has markedly changed her life because of this head pain.

(*Id.*) He also notes that several medications have not helped, and if they do, it is only temporary. (*Id.*) Dr. Christenson describes almost identical symptoms in medical records from March 14, 2016. (Tr. 502–03.)

In his decision, the ALJ stated that Dr. Christenson's letter from February 9, 2016, was accorded little weight because it was vague, it was written in order to secure insurance approval for a treatment that did improve the Plaintiff's symptoms, and Dr. Christenson's other examinations were inconsistent with the letter because they were "generally normal." (Tr. 25.)

In medical source statements ranging from September 22, 2015 to May 16, 2016, Dr. Christenson stated that Plaintiff had facial pain and weakness on the left side of her face, and he mentioned that she had allegedly been suffering from a persistent headache present 30 days a month and 24 hours a day that was causing her to become depressed and isolated; he also noted that while some medications provided relief, it was only temporary. (Tr. 464–67, 502–10, 530–37, 565–79.) However, Dr. Christenson also reported that Plaintiff generally did not appear in distress, had normal concentration levels and attention span, and had normal gait and coordination functions. (Tr. 466, 506-

07, 534, 570.) These objective findings do not support Plaintiff's contention that her headaches were present "30 days a month, 24 hours a day." (Tr. 474; Doc. No. 12, Pl.'s Mem. 10.)

After Plaintiff did receive Botox, the ALJ observed that the ER visits became "extremely infrequent, if not nonexistent," and that by 2017, Plaintiff's migraines had decreased in frequency to only once every couple of weeks and were easier to abort. (Tr. 23, 24, 616, 634–46, 665, 724.) Moreover, the record reflects that Plaintiff reports having walked for exercise, engaged in art, attended a town benefit, and was baking. (Tr. 676, 722, 733, 735.) This also is not consistent with Plaintiff's assertion that her headaches were present "30 days a month, 24 hours a day" and is inconsistent with the allegation that these symptoms were "obviously" affecting her ability to function and were having an "extensive impact on her life." (Tr. 474, 503; Doc. No. 12, Pl.'s Mem. 10; Tr. 474.)

Therefore, the ALJ provided adequate reasons supported by substantial evidence for his decision to give little weight to Dr. Christenson's opinions. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.'" (quoting *Piepgras v. Charter*, 76 F.3d 233, 236 (8th Cir. 1996)); *Goff*, 421 F.3d at 790–91 (affirming an ALJ's discounting of a treating physician's opinion when it is inconsistent with other substantial evidence in the record). As a result, the ALJ's decision must be affirmed. *See Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (stating that the court must affirm an ALJ's decision if it is

supported by substantial evidence, even if other evidence could support a different conclusion).

### B.   ALJ's Consideration of Dr. Megan Spencer's Opinion

Plaintiff also argues that the ALJ improperly weighed the opinions of Dr. Megan Spencer, Psy.D., L.P., a psychologist who had treated Plaintiff, and failed to provide good reasons for giving little weight to her opinion. (Doc. No. 12, Pl.'s Mem. 13–15.) Plaintiff asserts that Dr. Spencer's opinions indicate specific limitations Plaintiff faces as a result of anxiety and depression, including her inability to leave the house or to do any house or yard work. (*Id.* at 14.)

A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wildman*, 596 F.3d at 964. However, the medical opinion "[d]oes not automatically control, since the record must be evaluated as a whole." *Bentley*, 52 F.3d at 785–86 (citation omitted). Good reasons for giving a treating physician's opinion a lesser weight are present when the physician's opinions are inconsistent with themselves, when the opinions are inconsistent with the medical record as a whole, or when other medical opinions are better supported by the evidence. *See Chesser*, 858 F.3d at 1164; *Martise*, 641 F.3d at 925; *Goff*, 421 F.3d at 790–91; *see also* 20 C.F.R. § 404.1527(c)(2).

At issue on appeal are a psychiatric review and a mental RFC assessment from June 7, 2017, both written by Dr. Spencer while treating Plaintiff. (Tr. 474–93.) In the

psychiatric review, Dr. Spencer noted that Plaintiff fits the listing for post-traumatic stress disorder and persistent depressive disorder under the ICD-9-CM diagnosis and procedure code, based on factors such as significant cognitive decline from a prior level of functioning in complex attention, diminished interest in almost all activities, and disturbances in mood or behavior. (Tr. 479–80, 482, 490.) She also noted that Plaintiff has extreme limitations in each of the four "paragraph B" criteria,[6] and that Plaintiff's husband or son takes care of most of the household chores while she only leaves the house to visit her sister or attend medical and psychological appointments. (Tr. 491, 493.)

Similarly, in the mental RFC assessment, Dr. Spencer noted that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, in sustained concentration and persistence, in the ability to maintain socially appropriate behavior, and the ability to respond appropriately to changes in the work setting, among other things. (Tr. 476–77.) Again, Dr. Spencer lists ICD-9-CM diagnosis and procedure code criteria for post-traumatic stress disorder and persistent depressive disorder of which the Plaintiff's limitations fall under. (Tr. 478.)

In his decision, the ALJ stated that Dr. Spencer's opinions were accorded little weight because "they are out of proportion with Dr. Spencer's own treatment notes, which reflect tearfulness and stress but do not reflect 'extreme' limitations." (Tr. 26.) The

---

[6]     These four criteria represent areas of mental functioning. They are: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. (Tr. 491.)

ALJ also notes that the record is not consistent with Dr. Spencer's opinions as the record "reflects largely normal mental status examinations." (*Id.*)

Within Dr. Spencer's treatment notes, starting on July 27, 2016, she noted at times that Plaintiff was visibly teary-eyed, overwhelmed, and upset, and that Plaintiff made complaints that she was crying more often and experiencing more depressive symptoms as she discussed her past and subsequent mental health issues. (Tr. 684, 735, 748.) Dr. Spencer also noted at times that Plaintiff appeared adequately groomed, was calm and cooperative, had intact judgment, had no abnormalities in thought content, and no suicidal ideation. (Tr. 630–31.) Dr. Spencer consistently noted that Plaintiff arrived on time and was casually and appropriately dressed. (Tr. 630, 651, 659, 676, 684, 720, 722, 733, 735, 748.) Additionally, the record reflects Plaintiff's mental health improving as of early 2017, with Plaintiff able to engage in activities outside of the house. (Tr. 24, 722, 733, 735, 762.) Plaintiff was reported to have walked for exercise, improved her hygiene, engaged in art, attended a town benefit, and was baking. (Tr. 676, 722, 733, 735.) These parts of the record are inconsistent with Dr. Spencer's opinion that Plaintiff has extreme or marked limitations in her ability to interact with others and maintain socially appropriate behavior, in her ability to adapt or manage oneself, and analogously in her ability to respond to changes in the work setting.

Although Plaintiff reports at times having memory loss, the record reflects that her memory and attention are generally normal. (Tr. 499, 506, 561–62.) The record also does not reflect fatigue or tiredness resulting from insomnia, but instead reflects someone who is awake, alert, and "oriented to person, place, and time." (*Id.*) These parts of the

record are inconsistent with Dr. Spencer's opinion that Plaintiff has extreme or marked limitations in her ability to understand, remember, or apply information, and in her ability to sustain concentration and persistence.

Therefore, the ALJ provided adequate reasons supported by substantial evidence for his decision to give little weight to Dr. Spencer's opinions. *See Chesser*, 858 F.3d at 1164 ("Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent . . . .'" (quoting *Cruze v. Chater*, 85 F.3d 1320 (8th Cir. 1996)); *Goff*, 421 F.3d at 790–91 (affirming an ALJ's discounting of a treating physician's opinion when it is inconsistent with other substantial evidence in the record). As a result, the ALJ's decision must be affirmed. *See Chesser*, 858 F.3d at 1164 ("While we must consider both evidence that supports and evidence that detracts from the ALJ's determination, we 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (stating that the court must affirm an ALJ's decision if it is supported by substantial evidence, even if other evidence could support a different conclusion).

### C.    ALJ's Assessment of Plaintiff's Credibility

Plaintiff also challenges the ALJ's credibility analysis, arguing that the ALJ improperly assessed the Plaintiff's subjective complaints of symptoms according to the standards set forth in SSR 16-3p when he determined that such complaints were inconsistent with the record as a whole. (Pl.'s Mem. 15–19.)

13

The Eight Circuit's decision in *Polaski v. Hecker* identifies factors that the ALJ must consider in evaluating a claimant's subjective complaints.[7] *Polaski v. Hecker*, 739 F.2d 1320, 1322 (8th Cir. 1984). In addition to objective medical evidence, the ALJ must consider "the claimant's prior work record, and observations made by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; [and] 5. functional restrictions." *Id.* The ALJ is not required to discuss each factor individually or in depth. *See Dunahoo v. Apfel*, 214 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth."); *see also Hanson v. Colvin*, No. 12-cv-961 (TNL), 2013 WL 4811067, at *16 (D. Minn. Sept. 9, 2013) ("While the ALJ must consider the above factors, the ALJ need not discuss each one individually . . . ."). As a general matter, credibility determinations "are the province of the ALJ," and the Court will defer to the ALJ's decision "as long as 'good reasons and substantial

---

[7]     These factors are codified at both 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). The factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

evidence' support the ALJ's evaluation of credibility." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

Plaintiff alleged significant pain from trigeminal neuralgia and chronic migraines and alleged that her depression and anxiety caused severe difficulties. (Tr. 81–101, 108, 242.) She also alleged that her impairments and pain from these impairments make her unable to work or perform normal activities. (Tr. 89–90, 92, 94–99, 128, 242–43.) While the ALJ found that Plaintiff's impairments reasonably could be expected to cause the symptoms she alleged, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 21–22.)

The Court concludes that the ALJ properly discounted Plaintiff's credibility based on the evidence in the record. The ALJ expressly noted that his credibility determination was made based on the requirements of 20 C.F.R. § 404.1529, which includes the *Polaski* factors. (Tr. 20–21.) Specifically, the ALJ considered and pointed out inconsistencies relating to objective clinical findings and treatment history from Plaintiff's physical and mental examinations, her daily activities, work history, and third-party statements and opinions of record. (Tr. 20–26.)

First, regarding the clinical findings and treatment history, the ALJ thoroughly considered Plaintiff's history of pain due to trigeminal neuralgia and migraines as well as her history of depression and anxiety, finding evidence that undermined Plaintiff's subjective claims. (Tr. 21–24.) The ALJ determined that Plaintiff's treating records did

not support allegations that the Plaintiff "would be more limited than set forth in the residual functional capacity." (Tr. 22.)

For example, the ALJ noted that physical examinations were not consistent with Plaintiff's reports of pain or shakiness. (Tr. 22.) Instead the examinations "consistently reflect generally normal findings, including normal gait, coordination, strength, tone, and power." (Tr. 22, 534, 570, 575, 596.) Additionally, while some presentations indicated that Plaintiff was in pain or distressed, the ALJ observed that most of these presentations, including visits to the emergency room, indicated that Plaintiff was not in distress. (Tr. 22, 462, 466, 561, 570, 575, 602, 609, 642.)

The ALJ also noted that Plaintiff recovered quickly with treatment after ER visits. (Tr. 23, 563, 582, 610, 642.) Moreover, after receiving Botox, he observed that the ER visits became "extremely infrequent, if not nonexistent." (Tr. 23, 616, 634–46, 665.) The ALJ additionally noted that by 2017, Plaintiff's migraines had decreased in frequency to only once every couple of weeks and were easier to abort. (Tr. 24, 724.)

The ALJ also observed that Plaintiff's alleged symptoms of depression and anxiety are not consistent with the record. (Tr. 22–23.) For instance, he noted that Plaintiff's reports of insomnia and fatigue are not objectively reflected in the record, and the record instead reflects that Plaintiff is awake, alert, and "oriented to person, place, and time." (Tr. 22, 499, 506, 561–62.) Additionally, the ALJ noted that the record reflects Plaintiff's mental health improving as of early 2017, with Plaintiff able to engage in activities outside of the house. (Tr. 24, 722, 733, 735, 762.)

16

Second, regarding Plaintiff's daily activities, the ALJ noted that Plaintiff's claims of poor hygiene and grooming were inconsistent with the record. (Tr. 25, 630, 651, 735.) Moreover, he observed that the record shows Plaintiff has gotten out of the house to participate in different activities such as "walking, attending a benefit, baking, or working on art projects." (Tr. 25, 722, 733, 735.) The ALJ determined that "[e]ven if the claimant is as isolated and sedentary as she reports, however, the record does not establish the medical necessity of such inactivity or the psychological symptoms supporting the need for such withdrawal." (Tr. 25.) An ALJ may find that these types of activities could undermine claims of disabling pain. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) ("The results of a claimant's medical examinations and the claimant's reported daily activities can undermine a treating physician's opinion."); *see also Francisca A.B. v. Saul*, No. 18-2854, 2020 WL 1442876, at *6 (D. Minn. Mar. 24, 2020) (finding that daily activities such as driving, walking for at least three city blocks, and shopping in stores were inconsistent with severe limitations set by a treating physician); *Riggens v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

Third, regarding Plaintiff's work history, the ALJ considered that the Plaintiff had sought unemployment benefits, which "would generally require that she certify ability to work." (Tr. 25.) This does not conclusively prove that Plaintiff is disabled, but "it is compelling and seriously undermines a claimant's assertion that [they] are incapable of

17

working in [a] competitive environment." *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014); *see Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) ("A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work.") (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)).

Lastly, with regard to third-party statements and opinions of record, the ALJ considered the opinions of a state agency medical consultant, a state agency psychological consultant, Plaintiff's husband Joseph Ingvalson, Dr. Jerry Rogers, MD, Plaintiff's regular treating physician Dr. Shaun Christenson, and Dr. Megan Spencer. (Tr. 25–26.) The ALJ determined that the opinions of the state agency medical consultant and psychological consultant were consistent with the record. (Tr. 25–26, 108–21, 125–39.) The ALJ gave little weight to the opinion of Mr. Ingvalson because "he is not medically trained, and his statement is not consistent with the claimant's largely normal physical and mental examinations, nor her improvement with treatment." (Tr. 25, 259–66.) The ALJ also gave no weight to a form produced by Dr. Rogers, which recommended Plaintiff be off work, because it "is vague and fails to set forth specific functional limitations." (Tr. 25, 364.)

As discussed above, the ALJ gave little weight to the opinions of Dr. Christenson and Dr. Spencer. The ALJ gave little weight to a letter provided by Dr. Christenson because "it is vague and was generated in order to obtain insurance approval for treatment, which did ultimately improve the claimant's symptoms"; it also was not consistent with Dr. Christenson's "generally normal" physical examinations. (Tr. 25,

474.) The ALJ also gave little weight to a psychiatric review and mental RFC assessment produced by Dr. Spencer because they "are out of proportion with Dr. Spencer's own treatment notes" and the record "reflects largely normal mental status examinations and is not consistent with these opinions." (Tr. 26, 474–93.)

While Plaintiff argues that the ALJ failed to consider the duration, frequency, and intensity of Plaintiff's condition, any precipitating and aggravating factors, and any functional restrictions that Plaintiff experience in daily life in the credibility finding, as explained above the ALJ is not required to explicitly address each *Polaski* factor. *Milam v. Colvin*, 797 F.3d 978, 984 (8th Cir. 2015) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Because the ALJ considered and discussed substantial evidence in the record when making his determination about Plaintiff's subjective complaints, and because the ALJ gave sufficient reasons for discounting Plaintiff's complaints, this Court must defer to the ALJ's credibility determination. *See Gonzales v. Barnhart*, 465 F.3d 890, 895–96 (8th Cir. 2006).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**; and

2.    Defendant's Motion for Summary Judgment (Doc. No. 13) is  **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 4, 2021                                    _s/ Becky R. Thorson_____
                                                          BECKY R. THORSON
                                                          United States Magistrate Judge